FILED
2018 Oct-19 PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **CLEOPHUS GAINES, JR,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:18-cv-01465-RDP |
| } | |
| **GREENE COUNTY DIALYSIS, et al.,** } | |
| } | |
| **Defendants.** } | |
| } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiff's Motion to Remand. (Doc. # 4). Plaintiff Cleophus Gaines, Jr. sued Defendants Greene County Dialysis; DaVita, Inc.; DaVita Healthcare Partners, Inc.; DaVita Accountable Care Solutions, LLC; DVA Healthcare of Tuscaloosa, LLC; DVA Healthcare Renal Care, Inc.; and DVA Renal Healthcare, Inc. in state court. Plaintiff asserts state-law negligence and premises liability claims against Defendants. Defendant DVA Renal Healthcare, Inc. ("DVA Renal Healthcare") removed the case to this court, invoking diversity jurisdiction.

Defendant DVA Renal Healthcare does not dispute that Plaintiff and at least some of the other named Defendants (collectively, the "Alabama Defendants") are all citizens of Alabama, which would ordinarily defeat diversity jurisdiction. However, it argues that because Plaintiff fraudulently joined the Alabama Defendants to prevent removal, their citizenship should be disregarded in determining whether diversity jurisdiction exists. Plaintiff responds by asserting that DVA Renal Healthcare has not met the high standard for establishing fraudulent joinder and thus requests that the case be remanded to state court. After careful review, and for the reasons

explained below, the court agrees with Plaintiff. Because there is a possibility that Plaintiff can state a vicarious liability claim for negligence against at least one of the Alabama Defendants in state court, the court cannot say those Defendants were fraudulently joined and this case properly removed. Thus, Plaintiff's Motion to Remand is due to be granted.

I.      **Factual and Procedural Background**

This case arises out of a tragic accident that led to the death of Cleophus Gaines, Sr. On July 15, 2016, Gaines visited the outpatient facility Greene County Dialysis to receive kidney dialysis treatment. (Doc. # 1-1 at 12, ¶ 11). After completing his dialysis treatment session, Gaines waited in the front lobby of the facility for his wife to pick him up. (*Id.* at 12, ¶ 13). When Gaines saw his wife pull up to the front entrance, he rose from his seat and began walking to the door. (*Id.* at 13, ¶ 16). As he approached the front entrance, Gaines became dizzy, lightheaded, and weak, and he fell hard to the floor, severely injuring his left shoulder, left arm, and right hip. (*Id.*). Shortly after the fall, someone called 911 and an ambulance arrived to take Gaines to the hospital. (*Id.* at 15, ¶ 20). EMS personnel transported Gaines to a hospital in Tuscaloosa, where he was promptly treated and x-rayed by emergency room personnel. (*Id.* at 15, ¶¶ 21-23). Hospital staff later moved Gaines from the emergency department and admitted him to a room at the hospital. (*Id.* at 16, ¶ 24). He remained there until his health continued to decline, at which point the hospital transferred him to the intensive care unit ("ICU"). (*Id.*). Gaines' health continued to decline while in the ICU, and he passed away at the hospital on August 4, 2016, less than three weeks after he was admitted. (*Id.* at 16, ¶ 25).

Plaintiff alleges that during the time Gaines was waiting in the lobby after his dialysis treatment, no one from the dialysis facility was in the lobby to monitor or assist patients who had just undergone treatment. (*Id.* at 13, ¶ 14). Plaintiff also claims Defendants breached their duty to

ensure proper supervision of and assistance to Gaines, who as an elderly patient was at a known increased risk of dizziness, fatigue and weakness after receiving dialysis treatment and who himself had a documented prior history of falls and near-falls in the preceding months recorded in his chart at Greene County Dialysis. (*Id.* at 13-14, ¶¶ 15, 17-19). In his state-court Complaint, Plaintiff claims Defendants are both vicariously liable for the negligence of their agents and employees at Greene County Dialysis and directly liable for their own negligence (Count I). (*Id.* at 16-22). Plaintiff also asserts a premises liability claim against Defendants (Count II), alleging that they failed to take reasonable steps to make the front lobby and entrance area of the dialysis facility reasonably safe for their patients. (*Id.* at 23-25).

Plaintiff Cleophus Gaines, Jr., the personal representative of the estate of Cleophus Gaines, Sr. and a citizen of Alabama, filed this lawsuit in the Circuit Court of Greene County, Alabama. (*Id.* at 3, 7). Defendant DVA Renal Healthcare, a citizen of Colorado and Tennessee, removed the case to this court, invoking diversity jurisdiction. (Doc. # 1 at ¶ 2-3). Plaintiff maintains that there is not complete diversity of citizenship because all of the Defendants except DVA Renal Healthcare are Alabama citizens. (Doc. # 4 at 12). DVA Renal Healthcare does not dispute that premise. Instead, DVA Renal Healthcare argues that removal is proper because the Alabama Defendants were fraudulently joined. Thus, the first issue the court must decide is whether DVA Renal Healthcare has met its burden to show that each of the other named Defendants was fraudulently joined. If any one of them was not, then complete diversity does not exist and the court lacks subject matter jurisdiction under 28 U.S.C. § 1332. Further, if DVA Renal Healthcare succeeds in showing that each of the Alabama Defendants was fraudulently joined, the court must also address whether § 1332's amount-in-controversy requirement is satisfied.

## II. Standard of Review

A removing party bears the burden of establishing subject matter jurisdiction over a case removed to this court. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). Courts strictly construe removal statutes, and "all doubts about jurisdiction should be resolved in favor of remand to state court." *City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012). In particular, a party seeking to remove a case on the basis of fraudulent joinder faces a heavy burden of proof, *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and must establish fraudulent joinder by clear and convincing evidence, *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "Clear and convincing evidence" means "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain" and is "a greater burden than preponderance of the evidence . . . but less than evidence beyond a reasonable doubt." *Evidence*, Black's Law Dictionary (10th ed. 2014).

The court must determine whether fraudulent joinder occurred "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits . . . submitted by the parties." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Though permitted to consider evidentiary submissions by the parties, the court must resolve all questions of fact in favor of the plaintiff. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). Moreover, the court "must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538.

## III. Analysis

Title 28 U.S.C. § 1441 permits defendants to remove to federal court any state court action falling within the subject matter jurisdiction of the federal courts—that is, any case that could have been brought originally in federal court. Title 28 U.S.C. § 1332, in turn, grants

federal district courts jurisdiction over cases where complete diversity of citizenship exists among the parties and where the amount in controversy exceeds $75,000, even if the case raises only state law claims. If the law were that simple, there is no doubt this case would belong in state court: the plaintiff and several of the defendants are all citizens of the same state (Alabama), and thus complete diversity does not exist. But the law is not that simple. The doctrine of fraudulent joinder provides an exception to the ordinary rules of removal. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under the doctrine, a district court may exercise diversity jurisdiction even in the face of incomplete diversity *if* the plaintiff fraudulently joined the nondiverse defendants solely for the purpose of defeating federal jurisdiction. *Id.*

In this Circuit, a defendant can show fraudulent joinder in three circumstances. The first is where "there is no possibility that the plaintiff would be able to establish a cause of action against the [nondiverse] defendant in state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). The second is where "the plaintiff has fraudulently [pleaded] jurisdictional facts to bring the [nondiverse] defendant into state court." *Henderson*, 454 F.3d at 1281. The third is "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant."[1] *Triggs*, 154 F.3d at 1287.

---

[1] The first category listed is the usual one at issue when fraudulent joinder is raised. The third category was announced by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Several courts have criticized *Tapscott*'s fraudulent joinder standard. *See, e.g.*, *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126-28 (E.D. Cal. 2004) (explaining that *Tapscott*'s standard engenders "more procedural complexity" in removal proceedings and noting uncertainty about whether to apply federal or state joinder rules); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 851-55 (S.D. Ill. 2006) (describing *Tapscott*'s standard as "an improper expansion of the scope of federal diversity jurisdiction" and suggesting that courts "have foundered on shoals of tautology in trying to define fraudulent misjoinder"); *see also In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (declining to adopt or reject *Tapscott*'s fraudulent joinder doctrine).

The parties agree that only the first circumstance is at issue here. No one claims Plaintiff fraudulently pleaded jurisdictional facts or that Plaintiff's claims against DVA Renal Healthcare have no real connection to his claims against the Alabama Defendants. Thus, the only issue the court must decide is whether there is no possibility that Plaintiff could establish[2] either a negligence or premises liability claim against one of the Alabama Defendants in Alabama's courts. But if there is even a possibility that an Alabama court could conclude Plaintiff has stated a claim against one of the Alabama Defendants, this court "must find that the joinder was proper and remand the case to the state court." *Coker*, 709 F.2d at 1440-41.

DVA Renal Healthcare claims there is no possibility Plaintiff could establish a vicarious liability negligence claim against any of the Alabama Defendants for two reasons. First, DVA Renal Healthcare argues that the facts alleged by Plaintiff support a vicarious liability claim only against the *employer* of the staff members at the dialysis center, and DVA Renal Healthcare (not the Alabama Defendants) employed all personnel at the dialysis center at the time of Gaines' fall. Second, DVA Renal Healthcare argues that Plaintiff's vicarious liability claim against the Alabama Defendants has no possibility of succeeding because Plaintiff's allegations fail to satisfy the applicable pleading standard. The court disagrees on both counts. Considering the facts alleged in Plaintiff's Complaint and in the affidavit submitted by DVA Renal Healthcare,

---

[2] The court notes that one Eleventh Circuit case uses the term "prove" instead of "establish" in describing the standard for showing fraudulent joinder. *Triggs*, 154 F.3d at 1287 ("Joinder has been deemed fraudulent . . . when there is no possibility that the plaintiff can *prove* a cause of action against the resident (non-diverse) defendant.") (emphasis added). The difference in language is subtle, but it is important. The term "prove" might lead one to conclude the relevant inquiry is whether the plaintiff has a possibility of *succeeding* on the claim in state court, rather than merely whether the plaintiff has a possibility of *stating* a claim in state court. Fortunately, the body of Eleventh Circuit case law on this issue makes clear that *Triggs*' statement of the fraudulent joinder standard was simply imprecise and that the proper inquiry is indeed whether "there is even a possibility that a state court would find that the complaint states a cause of action against" the nondiverse defendant. *Coker*, 709 F.2d at 1440; *see also, e.g.*, *Legg*, 428 F.3d at 1324 (assessing whether there was any "reasonable possibility that Plaintiffs can establish a cause of action against" the nondiverse defendant); *Pacheco de Perez*, 139 F.3d at 1380 (describing standard for fraudulent joinder as whether "there is no possibility the plaintiff can establish a cause of action against the resident defendant"); *Crowe*, 113 F.3d at 1538 (same); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (same).

there is a reasonable possibility that an Alabama court could conclude Plaintiff has stated a viable vicarious liability negligence claim against at least one of the Alabama Defendants.[3]

### A. An Alabama Defendant Could Be Vicariously Liable for Gaines' Death Under a Principal-Agent Theory

Plaintiff claims Defendants are vicariously liable for the wrongful acts of the individuals working at the dialysis facility on the day of Gaines' fall because those individuals failed to properly supervise and assist Gaines while he waited in the lobby after his dialysis treatment. (Doc. # 1-1 at 18, ¶¶ 31-32). DVA Renal Healthcare argues Plaintiff cannot possibly establish vicarious liability against any of the Alabama Defendants because, at the time of Gaines' fall, DVA Renal Healthcare was the sole employer of all the dialysis facility personnel, and vicarious liability claims such as Plaintiff's may only be brought against an employer. According to DVA Renal Healthcare, any vicarious liability arising from the conduct of the dialysis facility personnel will run only against DVA Renal Healthcare, not any of the Alabama Defendants (who did not employ the personnel). To support its contention, DVA Renal Healthcare has submitted the affidavit of Wendy Garcia, a paralegal employed in the legal department of Defendant DaVita, Inc. (Doc. # 1-2). In the affidavit, Garcia attests that DVA Renal Healthcare employed all employees and supervisors at the Greene County Dialysis facility on the date of Gaines' fall and that no employee or supervisor at the facility was employed by any of the Alabama Defendants. (*Id.* at ¶ 4).

Plaintiff argues the court should not consider Garcia's affidavit because it is an unreliable sham affidavit. (Doc. # 4 at 8). But the court need not decide that question because, even accepting the affidavit as true, Plaintiff still has a possibility of stating a claim against the

---

[3] Because the court concludes that Plaintiff has a possibility of establishing a vicarious liability negligence claim against at least one Alabama Defendant, the court need not address whether he can establish his direct negligence or premises liability claims.

Alabama Defendants. The reason is simple: under Alabama law, medical facility staff can simultaneously be agents of one healthcare provider and employees of another, and in such a situation vicarious liability extends to both principal-agent and employer-employee relationships.

*Briggins v. Shelby Medical Center*, 585 So. 2d 912, 913-15 (Ala. 1991) is a case in point. There, the decedent's representative sued a hospital and an anesthesia group, claiming both entities were vicariously liable for the negligence of a nurse anesthetist employed by the anesthesia group. *Id.* at 914. The trial court granted summary judgment to the hospital on the vicarious liability claim, but the Alabama Supreme Court reversed. *Id.* at 914-15. The Alabama Supreme Court held that although the nurse anesthetist was "admittedly an employee" of the anesthesia group and not the hospital, "he may, nevertheless, be an agent or servant" of the hospital, making the hospital vicariously liable for actions he took within the scope of the agency. *Id.* at 915. Because fact questions existed regarding whether the nurse anesthetist was the hospital's agent, the court reversed the summary judgment entered in favor of the hospital. *Id.*

Thus, even if DVA Renal Healthcare was the sole employer of the personnel at Greene County Dialysis, that fact would not preclude Plaintiff from pursuing a vicarious liability claim against one of the Alabama Defendants—if Plaintiff can prove that the Alabama Defendant owned or operated the Greene County Dialysis facility and that the personnel who neglected to monitor and assist Gaines were agents of the relevant Alabama Defendant. As it turns out, that is exactly what Plaintiff has alleged in his Complaint. *See* (Doc. # 1-1 at 12, ¶ 12) (alleging that the Alabama Defendants "owned, operated, managed, staffed, ran, maintained, [or] controlled" the Greene County Dialysis facility); (*id.* at 16, ¶ 31) (alleging that the Greene County Dialysis facility personnel responsible for monitoring Gaines acted "as agents, servants, [or] employees"

8

of the Alabama Defendants). Thus, Plaintiff has alleged a possible claim for vicarious liability against both DVA Renal Healthcare (the alleged employer of the dialysis facility staff) *and* the Alabama Defendants (the alleged principals of the dialysis facility staff).

### B. Plaintiff's Allegations Possibly Satisfy the Relevant Pleading Standard

In a last-ditch effort to avoid remand, DVA Renal Healthcare argues that Plaintiff's allegations of agency relationships between the dialysis facility staff and the Alabama Defendants fail to satisfy the heightened pleading standard imposed by the Alabama Medical Liability Act ("AMLA"). Alabama typically applies a notice-pleading standard under which dismissal for failure to state a claim is appropriate only "when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Snider v. Morgan*, 113 So. 3d 643, 651 (Ala. 2012). But the AMLA mandates that in wrongful death actions against health care providers a plaintiff's complaint must provide "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." Ala. Code § 6-5-551. DVA Renal Healthcare claims that "Plaintiff's broad allegations concerning possible agency relationships. . . violate the heightened pleading standards in the AMLA." (Doc. # 8 at 7).

DVA Renal Healthcare's AMLA argument is unavailing. The Eleventh Circuit has held that it is not the job of district courts to definitively resolve whether a plaintiff accused of fraudulent joinder has satisfied special state-law pleading requirements in stating its claim against a nondiverse defendant. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281-84 (11th Cir. 2006). Rather, the question is only whether the removing defendant has "proven by clear and convincing evidence that no Alabama court could find [the plaintiff's] complaint sufficient." *Id.* at 1284. In *Henderson*, the district court denied a motion to remand on fraudulent

joinder grounds because the plaintiff failed to adequately plead fraudulent concealment against the nondiverse defendant, as required by Alabama pleading rules. *Id.* at 1282. The Eleventh Circuit reversed, reasoning that, because there was a possibility that an Alabama court could find the state pleading requirement satisfied, it was not the federal court's task "to gauge the sufficiency of the pleadings in this case." *Id.* at 1284. The court explained further that in the fraudulent joinder context, "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Id.*

As in *Henderson*, DVA Renal Healthcare has failed to show by clear and convincing evidence that no Alabama court could deem Plaintiff's allegations against the Alabama Defendants sufficient under the AMLA. The Alabama Supreme Court has held that the AMLA does not require "every element of the cause of action [to] be stated with particularity." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). Instead, the AMLA requires only that the plaintiff "give the defendant health care provider fair notice of the allegedly negligent act and . . . identify the time and place it occurred and the resulting harm." *Id.* "If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary 'detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff.'" *Id*.

Here, an Alabama court could conclude that Plaintiff's vicarious liability claim against one of the Alabama Defendants satisfies the AMLA's pleading standard. Plaintiff has provided the time and place of the allegedly negligent acts and the resulting harm in his Complaint. *See*

(Doc. # 1-1 at 12-14, ¶¶ 11-16) (alleging the negligence that caused Gaines' fall occurred on July 15, 2016 between 6:00 and 6:30 pm at the Greene County Dialysis facility and providing the address of the facility); (*Id.* at 15-16, ¶¶ 23-25) (describing Gaines' injuries and ultimate death in considerable detail). Moreover, Plaintiff has alleged that one or more of the Alabama Defendants owned, operated, or managed the dialysis facility where Gaines' injury occurred and that the facility personnel who negligently failed to monitor and assist Gaines were agents of those Defendants. (*Id.* at 8-10, 12, 16, ¶¶ 2-6, 12, 26). Because a medical facility may be vicariously liable for the acts of its nonemployee agents under Alabama law, *Briggins*, 585 So. 2d at 913-15, an Alabama court could find Plaintiff's vicarious liability claim sufficient under the AMLA. Other courts have reached this same conclusion on similar facts. *See Ash v. Providence Hosp.*, No. CIV. A. 08-0525-WS-M, 2009 WL 424586, at *7 (S.D. Ala. Feb. 17, 2009); *Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1188-90 (S.D. Ala. 2006).

Because DVA Renal Healthcare has failed to prove fraudulent joinder by clear and convincing evidence, complete diversity is lacking and this case is due to be remanded to state court. The court need not address whether § 1332's amount-in-controversy requirement is satisfied.

### IV. Conclusion

Federal courts are courts of limited jurisdiction. It is always incumbent upon them to ensure that they exercise only the jurisdiction conferred upon by them Congress. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). This is especially true in the context of removal jurisdiction, which raises significant federalism concerns. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (observing that when a federal court reaches the merits of a removed case where subject matter jurisdiction is lacking, "it deprives a state

court of its right under the Constitution to resolve controversies in its own courts"). A federal court should not lightly conclude that a controversy between two nondiverse parties raising only state law claims properly belongs in federal court on the basis of fraudulent joinder. Because Defendants have not met the high burden for establishing fraudulent joinder, Plaintiff's Motion to Remand (Doc. # 4) is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

DONE and ORDERED this October 19, 2018.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE